ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
JAN 2 8 2004
U.S. COURT OF FEDERAL CLAIMS

EXELON GENERATION COMPANY, LLC, on its own behalf and on behalf of MidAmerican Energy Company, successor to Iowa-Illinois Gas and Electric Company,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

No. 04-0103C

## COMPLAINT

Plaintiff Exelon Generation Company, LLC ("Exelon Generation"), through its undersigned counsel, files this Complaint against defendant, the United States of America, and states as follows:

## NATURE OF THIS ACTION

1. This is an action for breach of contract.[1] On June 17, 1983, Plaintiff Exelon Generation's predecessor in interest, Commonwealth Edison Company ("ComEd"), entered into a written contract with the United States, known as the Standard Contract for

[1] ComEd filed an action based on its rights under the Standard Contract in 1998, *Commonwealth Edison v. United States*, No. 98-621C (Ct. Fed. Cl.), which is still pending before Judge Emily C. Hewitt. Effective January 2001, as explained in paragraph 5, Exelon Generation owns the Nuclear Stations formerly owned by ComEd as well as the rights under the Standard Contract formerly possessed by ComEd, including the right to pursue damages related to the Nuclear Stations. On January 23, 2004, ComEd filed a motion to add Exelon Generation as a plaintiff in the *ComEd* case. This action is for the same claims and damages at issue in the *ComEd* case. This action is a protective lawsuit to prevent the possibility, no matter how slight or unfounded, that Plaintiff's claims could be challenged as time-barred because Exelon Generation was not made a named plaintiff before a statute of limitations ran, and Exelon Generation intends to dismiss this action as soon as Exelon Generation becomes a party to the already-pending *ComEd* case.

Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste (the "Standard Contract") pursuant to which the Government agreed to accept and dispose of spent nuclear fuel and high-level radioactive waste (collectively "SNF") produced by six nuclear generating stations owned by ComEd beginning January 31, 1998, in exchange for agreed payments fixed in the Standard Contract at particular amounts. The Standard Contract was assigned to, and is now held by, Exelon Generation, which also owns and operates the nuclear units covered under the Standard Contract. Exelon Generation and ComEd honored all of their contractual obligations that have become due under the Standard Contract. The Government breached the Standard Contract by failing to remove and dispose of SNF by the contractual deadline. In fact, the Government has declared that it will not begin to attempt to comply with its obligations until 2010 at the earliest, twelve years after the deadline specified in the Standard Contract.

## JURISDICTION

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1491(a)(1).

## PARTIES

3. Plaintiff Exelon Generation owns the following nuclear electricity generating facilities at issue in this lawsuit: (1) Dresden Units 1, 2 and 3 located in Morris, Illinois; (2) Zion Units 1 and 2 located in Zion, Illinois; (3) Byron Units 1 and 2 located in Byron, Illinois; (4) LaSalle Units 1 and 2 located in Seneca, Illinois; (5) Quad-Cities Units 1 and

2 located in Cordova, Illinois; and (6) Braidwood Units 1 and 2 located in Braidwood, Illinois (collectively the "Nuclear Stations"). The Nuclear Stations were previously owned by ComEd.

4. On October 20, 2000, Unicom Corporation, the former parent company of ComEd, merged into Exelon Corporation, the parent company of PECO Energy Company. As part of the corporate reorganization incident to that merger, ComEd's nuclear generating business was transferred to a newly-created subsidiary, Exelon Generation Company, LLC.

5. Consequently, effective as of January 2001, the Nuclear Stations, the Standard Contract that is the basis for this action, and all rights under the Standard Contract (including but not limited to the right to pursue all damages in connection with the Nuclear Stations) have all been assigned to Exelon Generation as the result of corporate transactions all involving entities whose ultimate corporate parent was or became Exelon Corporation. Subsequent references in this complaint to Exelon Generation shall include, where appropriate, its predecessor in interest, ComEd.

6. MidAmerican Energy Company ("MidAmerican") is an Iowa corporation and the successor in interest to Iowa-Illinois Gas and Electric Company. MidAmerican owns an undivided 25% beneficial interest in the Quad-Cities nuclear station, and Exelon Generation is authorized to act on MidAmerican's behalf in connection with this action.

7. Defendant is the United States acting by and through its Department of Energy ("DOE").

8. DOE is a cabinet-level department in the Executive Branch authorized to make contracts to accept and dispose of SNF generated by utilities including Exelon Generation.

## FACTUAL ALLEGATIONS

### Nature of the Government's Obligations Under the Standard Contract

9. SNF is composed in significant part of uranium and byproducts such as plutonium and other highly radioactive substances. SNF remains radioactive after it is removed from a nuclear reactor and must be isolated in safe disposal facilities for an indefinite period.

10. It has been the policy of Congress for many years, and remains so today, that the obligation to protect future generations from the hazards of SNF is better discharged by final disposal in Government-owned and-controlled sites than by storage in utility-controlled sites such as power generating facilities.

11. In 1982, Congress enacted the Nuclear Waste Policy Act ("NWPA"), codifying the Federal Government's long-standing commitment to accept responsibility and provide for the timely disposition of SNF produced by utilities. *See* 42 U.S.C. § 10101 *et seq.* Pursuant to Section 302(a)(5)(B) of the NWPA, the DOE was required to enter into contracts requiring it to begin accepting and disposing of commercially-generated SNF no later than January 31, 1998, in return for the payment of fees by utilities that generated or held title to SNF.

12. Pursuant to Section 302 of the NWPA (42 U.S.C. § 10222), the Government in 1983 developed the Standard Contract. The final Standard Contract prescribes the payment of fees into the Nuclear Waste Fund and the acceptance and disposition of SNF by the Government. *See* 10 C.F.R. § 961.11.

13. The Standard Contract provides that the Government shall begin to accept and dispose of SNF no later than January 31, 1998, and shall continue "until such time as all

SNF and/or HLW [high level radioactive waste] from the civilian nuclear power reactors . . . has been disposed of." (Standard Contract Art. II.)

**Specific Terms of Exelon Generation's Contract With the Government**

14. ComEd, Exelon Generation's predecessor in interest, entered into the Standard Contract at issue here on June 17, 1983, pursuant to which it undertook to pay fees to the Government for the acceptance and disposal of SNF. The fee was made up of two-parts: a "one-time fee," based on the number of kilograms of SNF that ComEd had utilized to generate electricity prior to April 7, 1983, which fee is not due until DOE commences performance; and a quarterly fee, a 1.0 mill per kilowatt-hour fee for electricity generated by the Nuclear Stations and sold on or after April 7, 1983. (Standard Contract Art. VIII.A.) As of September 30, 2003, ComEd and Exelon Generation have made payments of over $1.169 billion into the Nuclear Waste Fund for the nuclear units covered by the Standard Contract.

15. Congress established the Nuclear Waste Fund as a separate interest-accruing fund in the Treasury of the United States, to receive the fees paid to the Government by utilities pursuant to the Standard Contract.

16. According to the Office of Management and Budget, the balance in the Nuclear Waste Fund at the end of fiscal year 2002 (September 30, 2002) was $13.1 billion. The Government expects the Fund to accrue about $400 million in interest annually, and to receive contract payments from utilities amounting to approximately $700 million per year. The Government estimates that the balance in the Fund was $14.6 billion at the end of fiscal year 2003.

17. The Standard Contract obligated the Government to commence acceptance and disposal of Exelon Generation's SNF by January 31, 1998. (Standard Contract Art. II, Art. IV.B.5(a), and Art. VI.B.1(b).)

**The Government's Breaches Of**
**Its Obligations Under The Standard Contract**

18. During the late 1980's and early 1990's, many states and utilities became concerned about the Government's ability to meet its obligations to utilities and third parties under the Standard Contracts and otherwise.

19. In response to utility inquiries, on April 28, 1995, DOE issued a Final Interpretation of Nuclear Waste Acceptance Issues, 60 Fed. Reg. 21793-02 (1995) ("Final Interpretation") asserting that it did not have a statutory or contractual obligation to accept SNF beginning January 31, 1998, in the absence of a repository or interim storage facility constructed under the NWPA.

20. Certain states and utilities, including ComEd, petitioned for review of DOE's Final Interpretation in the United States Court of Appeals for the District of Columbia Circuit, pursuant to the NWPA (42 U.S.C. § 10139(a)(1)).

21. On July 23, 1996, in *Indiana Michigan Power Co. v. Department of Energy*, 88 F.3d 1272 (D.C. Cir. 1996), the U.S. Court of Appeals for the District of Columbia Circuit held that the NWPA imposed on the Government an obligation to begin disposing of SNF by January 31, 1998, conditioned only on fulfillment by the utilities of their obligations to pay fees into the Nuclear Waste Fund, and remanded the matter to the Government for proceedings consistent with the opinion.

22. In December 1996, the Government, acting through DOE, announced that it would not begin to dispose of SNF by the statutory deadline, and suggested that its delay was "unavoidable" and thus excusable under Article IX of the Standard Contract.

23. On January 31, 1997, Northern States Power Company and other utilities, including ComEd, filed a petition with the United States Court of Appeals for the District of Columbia to compel the Government to comply with the mandate in *Indiana Michigan* and to honor the Government's unconditional obligations under the NWPA and Standard Contract.

24. On June 3, 1997, while the mandamus proceeding was pending, the Government issued a document titled "Contracting Officer's Preliminary Determination that the Department of Energy's Delay in Beginning Spent Fuel Disposal Was Unavoidable." This document described the Government's difficulties in preparing a permanent deep geologic disposal site in which to store SNF, and asserted that the Government's failure to construct a deep geologic disposal site excused it from any obligation to utility Standard Contract parties because the delay was allegedly "unavoidable."

25. In *Northern States Power Co. v. United States,* 128 F.3d 754 (D.C. Cir. 1997), the Court of Appeals for the District of Columbia on November 14, 1997 rejected the Government's assertions in the June 3 Preliminary Determination, and reaffirmed its ruling in *Indiana Michigan* that the NWPA required the Government to undertake, through the Standard Contract, acceptance and disposal of utilities' SNF by January 31, 1998. The Court of Appeals held that "[t]he contractual obligations created consistently with the statutory contemplation leave no room for [the Government] to argue that it does not have a clear duty to take the SNF from the owners and generators by the deadline imposed by Congress." *Id.* at 758-59. The

Court issued a writ of mandamus "to correct [the Government's] misapprehension of [*Indiana Michigan*]," stating that "we preclude [the Government] from concluding that its delay is unavoidable on the ground that it has not yet prepared a permanent repository or that it has no authority to provide storage in the interim." *Id.* at 760.

26. The ruling of the Court of Appeals for the District of Columbia in *Northern States Power* precludes the Government from arguing here that its breach of Exelon Generation's Standard Contract is excused on the grounds that it was unavoidable or that the Government's performance of Exelon Generation's Standard Contract was impossible or in any way excused.

27. The Court of Appeals for the District of Columbia reaffirmed its November 1997 ruling in an order issued May 5, 1998, stating that "[o]ur decision in *Northern States* barred the DOE from interpreting the [Standard] Contract as imposing only a contingent disposal obligation." *Northern States Power Co. v. United States,* 1998 WL 276581, at *1 (D.C. Cir. May 5, 1998).

28. The declaratory and mandatory relief sought by the petitioning utilities in *Northern States* was separate and apart from any and all rights of such utilities, including Exelon Generation, to monetary damages or other relief for the Government's breach of its obligations pursuant to its Standard Contracts. The petitioning utilities in *Northern States,* including Exelon Generation's predecessor, expressly reserved their right to seek monetary damages against the Government in a court of appropriate jurisdiction.

29. Despite the second unequivocal ruling in *Northern States* that the Government had an unconditional obligation to commence acceptance of SNF by January 31,

1998, the Government failed to begin accepting SNF by the contractual and statutory deadline, and has publicly announced that it will not begin to dispose of SNF until 2010, at the earliest.

30. On August 31, 2000, the Federal Circuit, in a decision involving another utility that had sued for breach of the Standard Contract, concluded that DOE's failure to begin accepting SNF by the January 31, 1998 contractual deadline constituted a breach of the Standard Contract. *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336 (Fed. Cir. 2000). In the companion Northern States case, the Federal Circuit held that the unavoidable delays provision of the Standard Contract "does not bar a suit seeking damages for the Government's failure to begin performance at all by the statutory and contractual deadline of January 31, 1998." *Northern States Power Co. v. United States*, 224 F.3d 1361, 1367 (Fed. Cir. 2000). In summary, the Federal Circuit has determined as a matter of law that DOE breached the Standard Contract, and that Exelon Generation and and other similarly situated parties to the Standard Contract can bring an action for breach of contract in this Court.

31. As a consequence of the Government's refusal to accept and dispose of SNF, Exelon Generation has incurred and will incur very substantial costs, including, but not limited to, (1) the costs to provide additional SNF storage, and (2) the operations, maintenance and security costs Exelon Generation will incur to store SNF at the Nuclear Stations beyond the time that the Government would have removed all the SNF had the Government not breached the Standard Contract.

32. In addition, the Government's failure to honor its commitments under the Standard Contract will prevent Exelon Generation from being able to timely decommission its Nuclear Stations.

33. Exelon Generation's claims in this action are for damages resulting from the Government's existing breach of its obligation to dispose of Exelon Generation's SNF. Exelon Generation insists that the Government eventually meet its obligation to dispose of Exelon Generation's SNF, and, should the Government fail to do so, Exelon Generation reserves all rights to assert new and separate breach claims at that time.

## CLAIM FOR RELIEF

### Count I: Breach of Contract, Including Breach of the Covenant of Good Faith and Fair Dealing

34. Paragraphs 1 through 33 are incorporated herein by reference as if set forth in full.

35. Plaintiff has complied and continues to comply with all of its obligations under the Standard Contract, including the payment of all required fees into the Nuclear Waste Fund.

36. The Government's failure to begin to dispose of SNF beginning on January 31, 1998 constitutes a material partial breach of the Government's obligations under the Standard Contract. In fact, the Government has declared that it will not begin to dispose of SNF until 2010, at the earliest – twelve years after the deadline specified in the Standard Contract.

37. The Standard Contract contains an implied covenant of good faith and fair dealing, pursuant to which DOE has a duty to perform its obligations under the contract in good faith and not to take actions detrimental to Exelon Generation's contractual rights. In addition to its breach of contract identified in Paragraph 36, DOE has breached the covenant of good faith and fair dealing by failing and refusing to make any effort to meet the contractual deadline for

beginning to dispose of SNF; by steadfastly attempting to avoid its obligations under the Standard Contract as defined by the District of Columbia Circuit; by failing to make any effort to dispose of Exelon Generation's SNF or even to provide Exelon Generation with a firm date on which DOE will begin to do so; by attempting to limit its own obligations under the Standard Contract; by issuing documents with a proposed acceptance rate inconsistent with the parties' expectations and based on unlawful assumptions; and by insisting on Exelon Generation's continued performance of its reciprocal obligation to pay fees into the Nuclear Waste Fund despite DOE's refusal to perform.

38. In contrast to DOE's failure to take any action to meet its contractual commitments, DOE has taken action to receive, transport, and store SNF from other entities. For example, DOE has accepted and continues to store SNF from foreign research reactors.

39. As a direct and proximate result of the Government's breach of the Standard Contract, Exelon Generation has suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Exelon Generation respectfully requests that the Court enter judgment in its favor and against defendant granting Exelon Generation the following relief:

(a) damages for breach of contract in amount to be determined at trial;

(b) interest and such costs, expenses, and attorneys' fees as are available under applicable law; and

(c) such other relief as the Court deems just and proper.

Dated: January 28, 2004

Respectfully submitted,

By: ______________________

Norman M. Hirsch
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611
(312) 923-2782 telephone
(312) 840-7782 facsimile
COUNSEL FOR PLAINTIFF
EXELON GENERATION COMPANY, LLC, on its own behalf and on behalf of MidAmerican Energy Company, successor-in-interest to Iowa-Illinois Gas and Electric Company

Of Counsel:

Donald R. Cassling
David Jiménez-Ekman
Christopher Tompkins
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611
(312) 222-9350

David A. Handzo
Jenner & Block LLP
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, D.C. 20005
(202) 639-6000 telephone
(202) 639-6066 fax

Thomas S. O'Neill
Exelon Nuclear
Cornerstone II
5th Floor
4300 Winfield Road
Warrenville, IL 60555
(630) 657-3770